Grainne Callan, Esq. (SBN 318962)
GRAINNE CALLAN, ESQ.
1030 E. El Camino Real #374
Sunnyvale, CA 94087
408-982-6224

Attorney for Plaintiff Hanieh Iravanian

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANIEH IRAVANIAN, individually, and on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRANSLATIONS.COM, INC., a Nevada Corporation; TRANSPERFECT, INC., a Nevada Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | **Case No.: 4:22-CV-9157-JST**<br>*Removed from Santa Clara County Superior Court, Case No. 22cv407140*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS, OR ALTERNATIVELY, TO STAY**<br><br>Date: April 6, 2023<br>Time: 2:00 p.m.<br>Dept: Courtroom 6 |

**P&A OPPOSING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS, OR ALTERNATIVELY, TO STAY** -1-

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................2

Table of Authorities ..............................................................................................................3

Introduction ...........................................................................................................................4

Facts .......................................................................................................................................4

Argument ...............................................................................................................................5

      I.     There Is No Clear, Unmistakable Agreement to Place the Question of Arbitrability with the Arbitrator ................................................................................5

      II.    The Parties Did Not Agree to Arbitrate the Instant Claims ........................7

      III.   The Arbitration Provision is Unconscionable ............................................9

          A.    Procedural Unscionability ............................................................9

          B.    Substantive Unconscionability ....................................................10

      IV.   The Arbitration Agreement Specifically Excludes PAGA Claims ...........12

      V.    If the Court Compels Arbitration, It Must Occur in California. ................13

Conclusion ..........................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Amtax Holdings 463 v. KDF Communities-Hallmark, LLC*, 2018 WL 4743386 (C.D. Cal. Jan. 9, 2018) ................................................................. 7

*Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83 (Cal. 2000) ............... 10, 11

*AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986) .................. 6

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ........................................................ 7

*Chane v. Tesla Energy Ops., Inc.*, 2021 WL 4932733 (C.D. Cal. April 8, 2021) ................ 7

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013) ....................................... 10

*Galen v. Redfin Corp.*, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) ................................. 7

*Gerlach v. Tickmark, Inc.*, 2021 WL 319162 (N.D. Cal. July 28, 2021) ............................ 7

*Grand Prospect Partners, LP v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332 (Cal. Ct. App. 2015) ................................................................. 9

*Harper v. Charter Communications, LLC*, ___ F.Supp.3d ___, 2022 WL 4095889 (E.D. Cal. September 7, 2022) ................................................................. 9

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002) ...................................................... 6

*Jarboe v. Hanlees Auto Group*, 53 Cal.App.5th 539 (Cal. Ct. App. 2020) ...................... 12

*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) ............................. 9, 10, 11, 12

*Marmot v. Mastro*, 652 F.3d 982 (9th Cir. 2011) ............................................................... 6

*McGill v. Citibank, N.A.*, 2 Cal.5th 945 (Cal. 2017) ........................................................ 13

*McKellar v. Mithril Capital Mgmt, LLC*, 2020 WL 1233855 (N.D. Cal. March 13, 2020) ................................................................. 13

*Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) ........................... 5

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) ......................................... 9

*Rice v. Downs*, 248 Cal.App.4th 175 (Cal. Ct. App. 2016) ............................................... 8

*Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960) ....................................... 8

*Viking River Cruises, Inc. v. Moriana*, 142 S.Ct 1906 (2022) ......................................... 13

*Wapato Heritage, LLC v. U.S.*, 637 F.3d 1033 (9th Cir. 2011) ......................................... 8

*Zenelaj v. Handybook, Inc.*, 82 F.Supp.3d 968 (N.D. Cal. 2015) ...................................... 7

**Statutes**

California Labor Code § 2775 ............................................................................................ 13

California Labor Code § 925 .............................................................................................. 13

**INTRODUCTION**

In this action, Plaintiff Hanieh Iravanian alleges Defendants Translations.com, Inc. and Transperfect, Inc. willfully misclassified her as an independent contractor, as opposed to an employee, and committed numerous other violations of the California Labor Code and Unfair Competition Law with regard to her employment. Defendants removed the action from state court and now seek to compel arbitration pursuant to the terms of the Independent Contractor Agreement. This Court not only must decide the question of arbitrability, but for the reasons set forth herein, should find the instant dispute not relevant to the arbitration provision and/or that the arbitration agreement is unconscionable.

**FACTS**

Plaintiff, at all times material, has been a resident of California. (Iravanian Dec. at ¶ 2). She was hired by Defendants on March 30, 2021, to do transcription-related work in California. (Iravanian Dec. at ¶ 3). Although she was hired as a Project Coordinator at $30/hr, prior to her first day, Defendants changed her title to Project Moderator, with a rate increase to $40/hr. (Iravanian Dec at ¶ 3; Complaint at ¶¶ 21, 23). She worked in the Bay Area at locations determined by Defendants, used Defendants' tools and equipment, and performed services that were part of Defendants' regular business. (Iravanian Dec. at ¶¶ 10, 13-14).

Defendants instructed Plaintiff as to when, where, and how to perform her duties, and she was required to remain on business premises during work hours. (Iravanian Dec. at ¶¶ 10-12, 16). She was not permitted to delegate Defendants' work to others or provide services to other businesses or the general public. (Iravanian Dec. at ¶ 15). She was also not compensated for work beyond 40 hours per week. (Iravanian Dec. at ¶ 18). A male she trained to do her job was, upon information and belief, not a contractor. (Iravanian Dec. at ¶ 20).

On her first day, April 5, 2021, she was presented with an Independent Contractor Agreement and required to sign without the benefit of time to review or ability to obtain counsel. (Iravanian Dec. at ¶¶ 4-8; ECF 13-1, pp. 5-10). The agreement is one-sided, benefitting only the Defendants, and without opportunity to negotiate its terms. (Iravanian Dec. at ¶ 6; ECF 13-1, pp 5-10).

Relevant to the instant case, the agreement contains the following language regarding potential or actual breach by Plaintiff, as the contractor, and resolution of such breach:

> Contractor acknowledges that any actual or threatened breach of this Agreement may cause Company immediate and irreparable harm that cannot be adequately compensated by monetary damages, and therefore agrees that the Company shall be entitled to seek equitable and injunctive relief for actual or threatened breach of this Agreement in addition to any other remedies available at law or otherwise.
>
> In the event of a dispute, both parties agree to submit it to binding arbitration in New York City by the American Arbitration Association. Legal costs shall be paid as determined by the arbitrator.

(ECF 13-1, page 10 of 10).

Throughout her employment with Defendants, she was required to work more than 40 hours per week, was not provided meal or rest breaks, and was required to work off the clock, such that she was not paid for all work performed. (Iravanian Dec. at ¶ 18-19). She also was not paid her full earnings and received payment only sporadically. (Iravanian Dec. at ¶ 18). In August 2021, she was required to train a white male counterpart to perform her job, and upon information and belief, the male counterpart was not classified as an independent contractor. (Iravanian Dec. at ¶ 20). Ultimately, Plaintiff's employment was terminated. She has yet to be fully compensated and brings this action to recover for these and other violations of California state law.

## ARGUMENT

### I. There Is No Clear, Unmistakable Agreement to Place the Question of Arbitrability with the Arbitrator.

The first issue before the Court is who decides the question of arbitrability. "The federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

The question whether the parties have submitted a particular dispute to arbitration, i.e., the "*question of arbitrability*," is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986); *see also Marmot v. Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2011). A clear and unmistakable agreement to arbitrate arbitrability requires an express agreement to arbitrate arbitrability – not simply a general agreement to arbitrate disputes arising out of a contract. *Marmot* at 988.

In *Momot*, the arbitrability provision provided as follows:

> If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement or the validity or application of any of the provisions of this [arbitration provision]… the dispute shall be resolved exclusively by binding arbitration.

*Id.* The Ninth Circuit held that delegating determinations of "the validity or application of any of the provisions" to the arbitrator satisfied the clear and unmistakable standard. *Id.*

Unlike *Marmot*, the instant arbitration provision does not expressly delegate arbitrability determinations to the arbitrator.

> In the event of a dispute, both parties agree to submit it to binding arbitration in New York City by the American Arbitration Association.

(ECF 13-1, page 10). It simply provides for the disputes in the preceding paragraph to be arbitrated.

Lacking the "validity or application" language such as in *Marmot*, Defendant asserts that the clear and unmistakable evidence in the instant case is an incorporation of AAA rules into the agreement. (ECF 13, Section III(C), page 6 of 10). Courts do regularly hold that express incorporation of AAA or JAMS rules into an arbitration provision satisfies the clear and unmistakable evidence requirement. However, such cases do not apply here – Defendants' arbitration provision does not incorporate the AAA rules.

Consider the cases cited by Defendants. In *Brennan v. Opus Bank*, the arbitration provision provided that certain disputes be settled "by binding arbitration in accordance with the Rules of

the American Arbitration Association." 796 F.3d 1125, 1128 (9th Cir. 2015). The arbitration provision *Gerlach v. Tickmark Inc.* was multiple paragraphs and stated arbitration would be "conducted by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures, including the Optional Rules for Emergency Measures of Protection." 2021 WL 319162 at *1 (N.D. Cal. July 28, 2021). *Chane v. Tesla Energy Operations, Inc.*, involved a similar, expansive arbitration provision that included the following: "The arbitration, including the selecting of the arbitrator will be administered by JAMS, under its Streamlined Arbitration Rules." 2021 WL 4932733 at *1 (C.D. Cal. April 8, 2021).

The arbitration provision in *Amtax Holdings 463 v. KDF Communities-Hallmark, LLC*, provided that a party "may submit such controversy or dispute for arbitration to, and in accordance with the Rules of Practice and Procedure for the Arbitration of Judicial Disputes of [JAMS]." 2018 WL 4743386 at *1 (C.D. Cal. Jan. 9, 2018). Likewise, in *Zenelaj v. Handybook, Inc.*, the language provided that "[t]he arbitration will be commenced and conducted under the Commercial Arbitration Rules…of the American Arbitration Association… and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes." 82 F.Supp.3d 968, 971 fn 1 (N.D. Cal. 2015). Lastly, in *Galen v. Redfin Corp.*, the language provided, in part: "Any arbitration shall be conducted in accordance with the rules of the American Arbitration Association then in effect." 2015 WL 7734137 at *1 (N.D. Cal. Dec. 1, 2015).

Unlike the cases cited by Defendants, the arbitration provision at issue simply states that disputes will be submitted "to binding arbitration in New York City by the American Arbitration Association." Defendants fail to cite a single case finding that the question of arbitrability was delegated in the absence of express AAA/JAMS rules incorporation language. There is no incorporation of the AAA rules, and as a result, no express agreement to arbitrate arbitrability.

Lacking an express agreement or other "clear and unmistakable" evidence the parties intended to arbitrate the question of arbitrability, such determination lies with the Court.

**II.     The Parties Did Not Agree to Arbitrate the Instant Claims.**

Having established that the question of arbitrability lies with the Court, we next evaluate whether the parties agreed to arbitrate the instant claims. "[A]rbitration is a matter of contract and

a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). In the instant case, the relevant language of the Independent Contractor Agreement is as follows:

> Contractor acknowledges that any actual or threatened breach of this Agreement may cause Company immediate and irreparable harm that cannot be adequately compensated by monetary damages, and therefore agrees that the Company shall be entitled to seek equitable and injunctive relief for actual or threatened breach of this Agreement in addition to any other remedies available at law or otherwise.
>
> In the event of a dispute, both parties agree to submit it to binding arbitration in New York City by the American Arbitration Association. Legal costs shall be paid as determined by the arbitrator.

(ECF 13-1, page 10 of 10).

Although Defendants ask this Court to read the arbitration sentence on its own, "a written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Wapato Heritage, LLC v. U.S.*, 637 F.3d 1033, 1039 (9th Cir. 2011). When read in context, it is apparent the arbitration provision modifies the prior paragraph regarding the Company's ability to seek relief for a Contractor's actual or threatened breach. It is a continuation of dispute language, not a new idea.

It is also consistent with courts' interpretations of other arbitration provisions. Typical arbitration provisions in case law identified by the undersigned contain modifying language to indicate what disputes are arbitrable. For example, there is an entire line of case law regarding the difference between arbitrating "any claim arising out of or relating to the contract," as opposed to "any claim arising out of the contract." *See, e.g., Rice v. Downs*, 248 Cal.App.4th 175, 186-87 (Cal. Ct. App. 2016). Here, the modifier is the prior paragraph regarding an actual or threatened breach of the agreement by the Contractor and remedies available. (ECF 13-1 at p. 10).

At minimum, there exists a lack of clarity and ambiguity that must be construed against Defendants as the drafter. "[B]asic principles of contract interpretation require the court to construe ambiguities against the drafter of the contract, <u>including in the context of an arbitration agreement</u>. *Harper v. Charter Communications, LLC*, ___ F.Supp.3d ___, 2022 WL 4095889 at *3 (E.D. Cal. September 7, 2022) (internal citations omitted) (emphasis added).

Because the parties did not agree to arbitrate this Labor Claim action, Defendants' motion to compel arbitration must be denied.

### III. The Arbitration Provision is Unconscionable.

Assuming, *arguendo*, the Court finds the parties agreed to arbitrate the instant action, it is not enforceable due to unconscionability. The Ninth Circuit's recent opinion in *Lim v. TForce Logistics, LLC*, helpfully sets out the rules of unconscionability. A court may refuse to enforce a provision of a contract if it determines that the provision was unconscionable at the time it was made. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). A finding of unconscionability requires a showing of both procedural and substantive unconscionability. The analysis employs a sliding scale - the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice-versa. *Id.* (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017)).

#### A. Procedural Unconscionability

Procedural unconscionability concerns the making of the agreement and focuses on oppression or surprise due to unequal bargaining power. *Id.* at 1000. The oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. *Id.* Oppression can be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive. *Id.* (quoting *Grand Prospect Partners, LP v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347-48 (Cal. Ct. App. 2015)).

A contract of adhesion is one imposed and drafted by the party of superior bargaining strength that gives the subscribing party only the opportunity to accept the contract or reject it. *Id.*

at 1001. Although a contract of adhesion is not per se unconscionable, "unconscionability rules focus on the parties and the circumstances of the agreement and apply equally to the formation of all contracts." *Id.* at 1000-1001 (omitted internal quotations from *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 926 (9th Cir. 2013)).

In the instant case, the Independent Contractor Agreement is a contract of adhesion. It was presented to her on her first day of work. (Iravanian Dec. at ¶ 5). She did not draft the agreement and was not given an opportunity to negotiate its terms or obtain counsel. (Iravanian Dec. at ¶ 6). It was a take-it-or-leave-it contract. She could sign the agreement and work or decline and find a new job. (Iravanian Dec. at ¶ 7).

The instant case is akin to *Lim*, where Lim was presented with a contract of adhesion on the day it was to be executed. 8 F.4th at 1001 (reviewing findings of the district court). The material terms were preprinted, and there were no negotiations as to any of the contract terms. *Id.* Lim believed that, if he wanted to continue his work, he needed to sign the contract. *Id.* The Ninth Circuit held that "[t]hese circumstances, especially in the employment context, indicate some degree of procedural unconscionability. *Id.*

### B. Substantive Unconscionability

Substantive unconscionability is also present herein. Substantive unconscionability examines the fairness of a contract's terms and asks whether the terms are unreasonably favorable to the more powerful party. *Id.* at 1001-1002. "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided. *Id.* In the employment context, an arbitration cost-sharing requirement is the type of mandatory condition of employment that courts find substantively unconscionable, since an employee would not have to bear such costs if free to bring the action in court. *Id.* at 1002 (quoting *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 110-111 (Cal. 2000)). Courts also recognize that an employer generally has far greater resources than an individual, and the employee should not be required to pay for the opportunity to present claims and bear a greater financial risk in arbitrating claims than they would if they litigated the claims in federal court. *Id.*

In the instant case, Defendants have created the theoretical potential for Plaintiff to bear the full cost of arbitration: "Legal costs shall be paid as determined by the arbitrator." (ECF 13-1, p. 10). Not only does this language require Plaintiff to potentially bear a greater financial risk in arbitrating claims than if litigated in federal court, but Plaintiff <u>cannot even analyze such risk until there is a final arbitration ruling.</u>

Courts have also addressed unconscionability pertaining to forum selection clauses. To assess reasonableness of forum selection in an arbitration clause, the court must take into account the respective circumstances of the parties. *See Lim*, *supra*. For example, in the instant case, Plaintiff is an individual, not a corporation. Working for Defendants was her full time job, earning between $30-$40 per hour. (Iravanian Dec. at ¶¶ 3; Complaint at ¶¶ 22-24). Defendants, on the other hand, are a private employer with $562 million in revenue, more than 5,000 employees, and 10,000 clients. (Complaint at ¶ 20).

Lack of mutuality is also an element in the substantive unconscionability analysis. *See Armendariz*, 24 Cal. 4th at 116-117. A lack of mutuality can be found where there is a one-sided result, and an absence of justification for it. *Id.* at 117-118. Virtually every aspect of Defendants' agreement concerns Plaintiff's actions, e.g., "Contractor shall…," "Contractor represents and warrants…," "Contractor agrees…," "Contractor acknowledges…," "Contractor understands…," "Contractor shall not…" (ECF 13-1, pp 5-10). The only terms concerning Defendants' obligations favor Defendants[1], such as "The Company will <u>NOT</u> withhold any taxes," "All work product…shall become the property of the Company," and "breach of the agreement may cause Company immediate and irreparable harm that cannot be adequately compensated by monetary damages…" *Id.* Because the lack of mutuality is woven through the agreement (e.g., no single provision can be struck to cure the lack of mutuality), the resulting unconscionability requires the Court to void the entire agreement. *See Armendariz* at 124-125.

---

[1] Although the Independent Contractor Agreement provided that Defendants would not set Plaintiff's hours or set directives regarding the performance of the work, this was not true in practice. (*Compare* ECF 13-1 at § I(13)-(14), *with* Complaint at ¶¶ 105-08).

**P&A OPPOSING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS, OR ALTERNATIVELY, TO STAY -11-**

The Ninth Circuit reached a similar result in *Lim*. Where the arbitration agreement provided for fee-splitting and a forum in Dallas, Texas, the Court found that arbitration agreement imposed expenses that Lim would not have to bear if he were free to bring the action in court. 8 F.4th at 1003. The Ninth Circuit upheld the district court's holding that the agreement was unenforceable. *Id.* at 1006.

In sum, the Independent Contractor Agreement at issue is a contract of adhesion that unfairly favors Defendants and is designed to minimize claims by increasing financial risk of middle-class earners like Plaintiff at $40/hour. In light of the substantive and procedural unconscionability addressed above, the contract should be deemed void and unenforceable.

## IV. The Arbitration Agreement Specifically Excludes PAGA Claims

Assuming, *arguendo*, the Court finds the parties agreed to arbitrate the instant action, the arbitration agreement is not applicable to the PAGA Claims for two reasons. The contractor agreement specifically excludes PAGA claims and to rule otherwise would be a violation of public policy.

The one sentence referencing arbitration in the agreement states:

> In the event of a dispute, both parties agree to submit it to binding arbitration in New York City by the American Arbitration Association. Legal costs shall be paid as determined by the arbitrator.

(ECF 13-1, page 10 of 10).

Defendants failed to reference any representative action, including a PAGA action. As such, since they did not contain a PAGA waiver, all PAGA claims, including Plaintiff's individual claims are exempt from forced arbitration.

PAGA claims involve a dispute between an employer and the State of California, not between an individual employee and her employer. *See Jarboe v. Hanlees Auto Group*, 53 Cal.App.5th 539, 556 (Cal. Ct. App. 2020). To the extent that the PAGA claims asserted involve Defendants' employees other than Plaintiff, they are not claims Plaintiff is asserting arising out of her own employment by Defendants and therefore are not subject to the arbitration agreement between Defendants and Plaintiff.

In *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 955 (Cal. 2017), the California Supreme Court distinguished between private injunctive relief and public injunctive relief and held that "an arbitration agreement waiving a statutory right to seek a public injunction 'in any forum' is invalid as 'contrary to California public policy" because it "would seriously compromise the public purposes the statute intended to serve." *Id.* at 952, 961. In *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct 1906 (2022), the Court found that the FAA does not overrule or undermine McGill's core holding that an arbitration agreement cannot prohibit a party from seeking public injunctive relief in any forum.

With Defendants' agreement omitting PAGA claims in its agreement, this Court retains the authority to adjudicate both Plaintiff's individual claims and representative claims.

### V. If the Court Compels Arbitration, It Must Occur in California.

California Labor Code § 925 renders voidable any contractual provision that requires an employee who primarily resides and works in California, as a condition of employment, to agree to adjudicate outside of California a claim arising in California. *McKellar v. Mithril Capital Mgmt, LLC*, 2020 WL 1233855 at *6 (N.D. Cal. March 13, 2020). "If the employee requests that such a provision be voided, the matter shall be adjudicated in California and California law shall govern the dispute." *Id.* (internal quotation omitted).

Section 925 applies only to employees; however, because Plaintiff alleges Defendants willfully misclassified her as an independent contractor to avoid taxes, for purposes of this motion, the Court must consider whether Plaintiff was an employee. *Id.* at *6. *McKellar* was decided prior to the repeal of Labor Code § 2750.3. The current determination would fall under the three-part test set forth in Labor Code § 2775, where a person is an employee unless the hiring entity demonstrates (A) the person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; (B) the person performs work that is outside the usual course of the hiring entity's business, and (C) the person is customarily engaged in an independently established trade… of the same nature as that involved in the work performed. California Labor Code § 2775(b)(1).

In the instant case, Plaintiff worked in the Bay Area at locations determined by Defendants, used Defendants' tools and equipment, and performed services that were part of Defendants' regular business. (Iravanian Dec. at ¶¶ 10, 13-14). Defendants instructed Plaintiff as to when, where, and how to perform her duties, and she was required to remain on the business premises during work hours. (Iravanian Dec. at ¶¶ 10-12, 16). She was not permitted to delegate Defendants' work to others or provide services to others. (Iravanian Dec. at ¶ 15). She was also not compensated for work beyond 40 hours per week. (Iravanian Dec. at ¶ 18). A male she trained to do her job was, upon information and belief, not a contractor. (Iravanian Dec. at ¶ 20). As a result, Plaintiff is an employee within the meaning of § 925. Although Plaintiff asserts the arbitration clause is not enforceable herein, at minimum, the provisions of the independent contractor agreement governing forum and choice of law must be voided in favor of California.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendants' motion to compel arbitration and order such other and further relief the Court deems warranted.

DATED: February 23, 2023           GRAINNE CALLAN, ESQ.


By: _____
    GRAINNE M. CALLAN
    Attorney for Defendant Vyanca Soto