UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANIEH IRAVANIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>TRANSLATIONS.COM, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-09157-JST<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY COMPLAINT**<br><br>Re: ECF No. 13 |

Before the Court is Defendants Translations.com, Inc.'s and TransPerfect, Inc.'s motion to compel arbitration. ECF No. 13. The Court will deny the motion.

## I.   BACKGROUND

Defendant Translations.com, Inc. offers translation services for multilingual content, generating $562 million in revenue and employing more than 5,000 employees. ECF No. 1-3 ¶ 20. Defendants hired Plaintiff Hanieh Iravanian on March 30, 2021 and set a start date of April 5, 2021. ECF No. 1-3 ¶ 21. Plaintiff is a California resident. ECF No. 1-3 ¶ 5.

On Plaintiff's start date, Defendant required Plaintiff to sign and acknowledge an Independent Contractor Agreement ("ICA") in order to begin work. ECF No. 13-1 ¶ 4. The ICA contains an arbitration agreement that reads, "In the Event of a dispute, both parties agree to submit it to binding arbitration in New York City by the American Arbitration Association. Legal Costs shall be paid as determined by the arbitrator." ECF No. 13-1 at 10. Plaintiff signed and acknowledged the agreement at 9:24 a.m. that same morning.

On November 8, 2022, Plaintiff filed a complaint in the Santa Clara County Superior Court. ECF No. 1-3 at 2. Plaintiff alleges that Defendants failed to compensate her for required overtime, to pay her in a timely manner for hours worked, to compensate her for missed meal and

rest break periods, and to reimburse her for required use of her personal equipment. *Id.* ¶¶ 31–34. She brings 16 claims pursuant to the California Labor Code, California Business and Professions Code, California Government Code, and Fair Labor Standards Act. Defendants filed an answer on December 28, 2022, *id.* at 13, and removed the case to this Court on December 29, 2022, ECF No. 1. Defendants filed the instant motion on February 9, 2023. ECF No. 13. The Court took the motion under submission without a hearing on March 27, 2023. ECF No. 20.

## II.    JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1332(a).

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration. *Id.* § 3.

If a valid arbitration agreement exists, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV.    DISCUSSION

The parties dispute (1) whether the arbitration agreement delegates the inquiry of

1  arbitrability to the American Arbitration Association ("AAA") arbitrator or can be properly heard
2  by this Court and (2) whether the arbitration agreement is unconscionable and thus unenforceable.

3        **A.**      **Delegation of Arbitrability**

4        "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the
5  parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-*
6  *A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (quoting *Howsam v. Dean Witter*
7  *Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)).  "Just as the arbitrability of the merits of a dispute
8  depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the
9  primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First*
10 *Options of Chi. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (internal citations
11 omitted).  Whether the court or an arbitrator decides arbitrability is "an issue for judicial
12 determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S.
13 at83 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986)).
14 Although courts generally resolve such ambiguities in favor of arbitration, ambiguities regarding
15 the delegation of arbitrability are resolved in favor of court adjudication.  See *First Options*, 514
16 U.S. at 944–45.  "Clear and unmistakable evidence of an agreement to arbitrate arbitrability
17 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do
18 so.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v.*
19 *Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

20       The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and
21 unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F3d
22 at 1130.  The Ninth Circuit stated that its holding did "not foreclose the possibility that this rule
23 could also apply to unsophisticated parties or to consumer contracts," but it explicitly left that
24 question open.  *Id.* at 1130–31.  However, "[w]here at least one party is unsophisticated, judges in
25 this district routinely find that the incorporation of the AAA rules is insufficient to establish a
26 clear and unmistakable agreement to arbitrate arbitrability." *Magill v. Wells Fargo Bank, N.A.*,
27 No. 4:21-cv-01877 YGR, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021) (citing *Eiess v.*
28 *USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019); *accord Meadows v. Dickey's*

*Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1077–79 (N.D. Cal. 2015); *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at *7–8 (N.D. Cal. Mar. 14, 2016).

Defendants argue that the ICA contains language adequate to incorporate the AAA rules, ECF No. 13 at 6-8; ECF No. 18 at 3–5, and that Plaintiff is sufficiently sophisticated for the Court to construe that language as clear and unmistakable evidence that Plaintiff agreed to arbitrate arbitrability, ECF No. 18 at 4.  Plaintiff argues that the language of the ICA does not incorporate the AAA rules.  ECF No. 17 at 7.

The Court agrees with Plaintiffs.  The ICA simply states, "[B]oth parties agree to submit [a dispute] to binding arbitration in New York City by the American Arbitration Association."  This language contrasts sharply with the language of other contracts that courts have found sufficient to incorporate the AAA rules or to otherwise provide clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See id.* at 1128 ("[A]ny controversy . . . . shall be settled by binding arbitration with the Rules of the American Arbitration Association."); *Momot v. Mastro*, 652 F.3d 982, 987–88 (9th Cir. 2011) ("If a dispute arises out of or relates to . . . the validity or application of any of the provisions of this [s]ection . . . ."); *Gerlach v. Tickmark*, No. 21-cv-02768-YGR, 2021 WL 3191692, at *5 (N.D. Cal. Jul. 28, 2021) ("[A]ny such controversy or claim . . . shall be submitted to binding individual arbitration before a single, neutral arbitrator . . . conducted by the American Arbitration Association *under its Employment Arbitration Rules and Mediation Procedures . . . .*" (emphasis added)); *Shierkatz Rllp v. Square, Inc.*, No. 15-cv-2202-JST, 2015 WL 9258082, at *6 (N.D. Cal. Dec. 17, 2015) ("All Disputes shall be resolved finally and exclusively by binding individual arbitration with a single arbitrator administered by the American Arbitration Association (www.adr.org) or JAMS (www.jamsadr.org) according to this provision *and the applicable arbitration rules for that forum.*" (emphasis added)).  This is because the ICA"s language merely selects the forum in which a dispute is to be adjudicated; it does not purport to provide the rules governing that adjudication, let alone incorporate the AAA rules that confer to the arbitrator "the power to rule on his or her own jurisdiction."  *Brennan*, 796 F.3d at 1131.  Therefore, the ICA does not clearly and unmistakably delegate arbitrability to the arbitrator, and the Court may determine the arbitrability of the parties' dispute.

**B.      Unconscionability**

A contract may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Unconscionability "refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013)). An agreement may be found to be "invalid if it is both procedurally and substantively unconscionable." *Sanchez v. Carmax Auto Superstores California LLC*, 224 Cal. App. 4th 398, 402 (2014). "Procedural unconscionability focuses on oppression and surprise due to unequal bargaining power, and substantive unconscionability turns on overly harsh or one-sided results." *Id*. The unconscionability inquiry "employs a sliding scale—the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "As the party opposing arbitration," Plaintiff "bears the burden of proving . . . unconscionability." *Sonic-Calabasas*, 57 Cal. 4th at 1145 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

### 1.      Procedural Unconscionability

"Procedural unconscionability analysis focuses on oppression or surprise." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). "*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a . . . form." *Kho*, 8 Cal. 5th at 126 (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012)) (emphases in original). "Oppression can be established 'by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). An adhesive contract is a

standardized form offered by the party with superior bargaining power "on a take-it-or-leave-it basis," *id.* (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)), but such a contract is not "per se unconscionable," *Poublon*, 846 F.3d at 1260. Other circumstances to be considered include but are not limited to:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (2015)).

The Ninth Circuit's opinion in *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021), is instructive. There, the Ninth Circuit considered both an arbitration agreement and a delegation clause in an independent-contractor agreement signed by a delivery driver and held that the provision was procedurally unconscionable. As to oppression, the Ninth Circuit concluded that the contract was a contract of adhesion and that "the only choice [the defendant] provided to him was to agree to the . . . clause and the rest of the contract or stop delivering." *Id.* at 1001. As to unfair surprise, the Ninth Circuit emphasized that the defendant "presented the delegation clause in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font," "[n]othing in the text of the agreement called [the plaintiff's] attention to the . . . clause, and [the plaintiff] was not required to sign or initial that specific provision." *Id.* On this basis, the Ninth Circuit concluded that procedural unconscionability existed because the degree of oppression and surprise in the contract "left [the plaintiff] without an ability to negotiate and to make only a take-it-or-leave-it-decision." *Id.* (internal quotation marks omitted). The Ninth Circuit reached this conclusion both with respect to the arbitration agreement as a whole and to the delegation clause specifically. *See id.* at 1001, 1006.

The case at hand presents substantially identical circumstances. As to oppression, Defendants gave Plaintiff the adhesion contract on the day it was to be executed, and Plaintiff could either sign the ICA or find a different job. Plaintiff was not given an opportunity to negotiate its terms or obtain counsel to review it. ECF No. 17-1 ¶ 5–8. "These circumstances,

especially in the employment context, indicate some degree of procedural unconscionability." *Lim*, 8 F.4th at 992; *accord Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 420 (N.D. Cal. 2015); *cf. Armendariz*, 24 Cal. 4th at 115 ("In the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement."). As to surprise, the arbitration agreement is located at the end of more than 40 individual paragraphs with no visual markers to call Plaintiff's attention to it, and Plaintiff was not required to sign or initial that specific provision. *See* ECF No. 13-1. This element of unfair surprise enhances the degree of procedural unconscionability of the arbitration agreement. *Lim*, 8 F.4th at 992; *OTO*, 8 Cal. 5th at 128. Consequently, the ICA contains both oppression and surprise, and it is therefore procedurally unconscionable to a significant degree.

Defendants' arguments to the contrary are unpersuasive. Defendants contend that the agreement is not procedurally unconscionable because Plaintiff is "a sophisticated college graduate, who is fluent in English." ECF No. 18 at 7. The case on which Defendants rely for this argument addressed a contract that incorporated the AAA rules in considering whether a contract presented clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. As discussed above, the ICA does not incorporate the AAA rules. In any event, Defendants cite no authority in support of their contention that fluency in English and the attainment of a college degree are a cure-all in the face of a procedurally unconscionable employment contract.

### 2. Substantive Unconscionability

"Substantive unconscionability examines the fairness of a contract's terms." *Lim*, 8 F.4th at 1001. The doctrine "is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Poublon,* 846 F.3d at 1158 (citation omitted). "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one sided." *Lim*, 8 F.4th at 1002. "[S]ubstantive unconscionability exists when a fee-shifting clause creates for employees a 'greater financial risk in arbitrating claims than they would face if they were to litigate those same

claims in federal court." *Id.* (quoting *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010), *disapproved of on other grounds by Poublon*, 846 F.3d at 1265–66). When the contract contains a forum-selection clause, the clause is substantively unconscionable if it is "'unreasonable' in that 'the forum selected would be unavailable or unable to accomplish substantial justice.'" *Id.* (quoting *Poublon*, 846 F.3d at 1265). In considering such clauses, "the court] must take into account the respective circumstances of the parties." *Id.* (quoting *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1288 (9th Cir. 2006)).

    *Lim* is further instructive here. The independent contractor agreement in *Lim* contained a cost-splitting provision that split costs evenly between the parties by default, a fee-shifting provision that awarded fees to the prevailing party, and a forum-selection clause that selected Dallas, Texas. 8 F.4th at 996–97. The Ninth Circuit concluded that, "[v]iewed collectively, . . . the cost-splitting, fee-shifting, and Texas venue provisions rendered the . . . clause substantively unconscionable as to [the plaintiff]." *Id.* at 1002. The cost-splitting provision "impermissibly impose[d] a '*type* of expense that [the plaintiff] would not be required to bear if he [] were free to bring the action in court.'" *Id.* at 1003 (emphasis in original) (quoting *Armendariz*, 24 Cal. 4th at 110–11). The fee-shifting provision "create[d] a chilling effect on [the plaintiff] enforcing his rights because it expose[d] him to the possibility of paying attorney's fees . . . if he lost at arbitration," whereas "California public policy 'unequivocally prohibits an employer from recovering attorney fees for defending a wage and hour claim'" in court. *Id.* (quoting *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1256 (2016), *disapproved of on other grounds by Naranjo v. Spectrum Sec. Servs.*, 15 Cal. 5th 93 (2022)). And the forum-selection provision "rendered the . . . clause so 'prohibitively costly' so as to deprive [the plaintiff]," a resident of Southern California, "of any proceeding to vindicate his rights or accomplish substantial justice." *Id.* at 1003

    The ICA has important similarities with the agreement at issue in *Lim*. It contains a clause that allows the arbitrator to determine costs, as well as a forum-selection clause selecting New York City. The former places Plaintiff at risk of paying costs that she would not be required to pay if she pursued her claims in state or federal court. That risk is greater than the risk faced by

8

the Plaintiff in *Lim* because there is nothing in the provision that prevents the arbitrator from imposing the full costs of arbitration on Plaintiff. The latter forum-selection clause imposes a significant financial burden on Plaintiff to vindicate her rights under the ICA. Plaintiff lives in California, was compensated for her work at a rate of thirty- to forty-dollars per hour, and her position with Defendants was her full-time job. ECF No. 1-3 ¶ 22–23; ECF No. 17-1 ¶ 3. For Plaintiff to travel from California to New York City would impose a significant financial burden, requiring Plaintiff to secure travel, accommodations, and time off from her current employment. That her hourly compensation was between thirty- to forty-dollars per hour appreciably exacerbates the degree of that burden. These two provisions, viewed collectively, render the arbitration clause "so 'prohibitively costly' so as to deprive Plaintiff of a proceeding to vindicate her rights." *Lim*, 8 F.4th at 1003; *see Reyes v. Hearst Commc'ns, Inc.*, No. 21-cv-03362-PJH, 2021 WL 3771782 at *3–4 (N.D. Cal. Aug. 24, 2021) (holding substantively unconscionable a provision apportioning arbitrator's and/or arbitration fees equally between parties).

In an effort to save the arbitration clause from substantive unconscionability, Defendants state in their reply brief that they "are amenable to California choice of law and venue being applied and to using AAA's Employment Arbitration Rules and Procedures in an arbitration of Plaintiff's individual claims." ECF No. 18 at 5. While Defendants' after-the-fact concession might underscore the degree to which the ICS is obviously unfair, it does not assist their motion. Courts have explained that such concessions "can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1535–36 (1997). Allowing Defendants to waive unconscionable terms in this manner would enable all employers to "draft one-sided agreements and then whittle down to the least-offensive agreement if faced with litigation, rather than drafting fair agreements in the first interest." *Saravia*, 310 F.D.R. at 421–22.

Defendants also ask the Court to sever the unconscionable provisions from the arbitration agreement as a whole. ECF No. 18 at 5–6. The Ninth Circuit explained in *Lim* that "an arbitration agreement permeated by unconscionability, or one that contains unconscionable aspects that

9

cannot be cured by severance, restriction, or duly authorized reformation, should not be enforced." 8 F.4th at 992 (quoting *Armendariz*, 24 Cal. 4th at 126). The arbitration agreement in the ICA contains two provisions, each of which is substantively unconscionable, and the entire agreement is permeated by procedural unconscionability. Accordingly, neither provision can be cured by severance.

Given the significant degree of procedural unconscionability and measurable degree of substantive unconscionability in the arbitration agreement, the Court concludes that the agreement is invalid.

## CONCLUSION

For the foregoing reasons, Defendants' motion is denied.

**IT IS SO ORDERED.**

Dated: August 17, 2023



JON S. TIGAR
United States District Judge