United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HANIEH IRAVANIAN,

Plaintiff,

v.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.,

Defendant.

Case No. 22-cv-09157-JST

**ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING IT IN PART**

Re: ECF No. 94

Before the Court is Defendant Transperfect Translations International, Inc.'s motion to dismiss the fourth amended complaint ("4AC"). ECF No. 94. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Iravanian filed the complaint in this matter in Santa Clara County Superior Court. ECF No. 1. Defendant filed a notice of removal on December 29, 2022. *Id.* On March 5, 2024, Iravanian filed a first amended complaint pursuant to the parties' stipulation. ECF No. 42. On October 11, 2024, the parties stipulated to allow a second amended complaint, which Iravanian filed on October 17. ECF No. 50. On May 29, 2025, the Court consolidated this case with a related suit involving the same parties. ECF No. 57. On July 16, 2025, the Court granted the parties' stipulation permitting Iravanian to file a third amended complaint ("TAC") consolidating claims from both actions. ECF No. 65. Iravanian filed the TAC that same day. ECF No. 66. Defendant filed a motion to dismiss the TAC in part on August 15, 2025 and the Court granted that motion in part with leave to amend some claims on March 17, 2026. ECF Nos. 70, 85. On April 9, 2026, Iravanian filed a motion for reconsideration challenging the Court's dismissal with prejudice of a claim for which she sought leave to amend, which the Court granted on May 27,

United States District Court
Northern District of California

2026. ECF Nos. 90, 100.

Iravanian filed the fourth amended complaint ("4AC") on April 7, 2026. ECF No. 89. Like the prior complaints, the 4AC alleges that Defendant misclassified her as an independent contractor and, as a result, failed to comply with various California employment laws. *Id.* On April 21, 2026, Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike improper allegations and requests for relief pursuant to Rule 12(f). ECF No. 94. Iravanian opposed on May 5, 2026. ECF No. 98. Defendant replied on May 12, 2026. ECF No. 99.

**II. JURISDICTION**

The Court has jurisdiction under 28 U.S.C. § 1332(d)(2).

**III. LEGAL STANDARD**

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a claim on which relief may be granted, the court must "accept factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020).

Under Rule 12(f), the Court may strike redundant, immaterial, impertinent, or scandalous matter. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). The function

of Rule 12(f) is to avoid the expenditure of time and money litigating spurious issues. *Id.* at 973 (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

## IV. DISCUSSION

### A. Class Allegations

Although district courts generally decline to resolve Rule 23 issues at the pleading stage, *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1063 (N.D. Cal. 2015) (citing *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969)), they may dismiss class allegations under Rule 12(b)(6) where the complaint "lacks any factual allegations and reasonable inferences that establish the plausibility of class allegations," *see Mish v. TForce Freight, Inc.*, No. 21-cv-04094 EMC, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (emphasis in original).

Where a plaintiff defines a class encompassing employees or contractors performing varied roles, the complaint must allege facts plausibly supporting an inference that individuals across those roles were subject to the same allegedly unlawful policies or practices. *Webb v. Rejoice Delivers LLC*, No. 22-cv-07221-BLF, 2025 WL 2259007, at *7 (N.D. Cal. Aug. 7, 2025); *Rubalcaba v. R&L Carriers Shared Servs., L.L.C.*, No. 23-cv-06581-HSG, 2025 WL 722442, at *6 (N.D. Cal. Mar. 6, 2025). Conclusory allegations of "de facto policies" or common practices, without factual detail explaining how those practices operated across differing job functions, are insufficient to plausibly plead class-wide claims. *Mish*, 2021 WL 4592124, at *9.

The Court's prior order found that "the TAC's factual allegations are limited almost entirely to Iravanian's own experience" and that it "contains no specific factual allegations describing the work conditions, compensation practices, or wage experiences of any other putative class or subclass member, nor any facts plausibly supporting an inference that individuals performing different services were subject to the same challenged practices." ECF No. 85 at 6. Defendant argues that Iravanian has failed to cure these deficiencies because she "alleges no facts showing that her own experience is similar to the varied experiences of the putative class members, and her class allegations remain devoid of specifics and consist only of recitations of statutory elements." ECF No. 94 at 16.

The 4AC adds the following relevant allegations. It alleges that all class members were

subject to common work and pay conditions by virtue of Defendant's standard form Independent Contractor Agreements ("ICAs") containing common provisions concerning equipment and reimbursement of expenses and containing no provisions concerning overtime, meal and rest periods, or paid sick leave. ECF No. 89 ¶¶ 37–38. It also alleges that Defendant's 30(b)(6) corporate designee testified about common practices including failure to provide wage statements, meal and rest periods, reimbursement, and sick leave affecting all class members, and that he was not aware of any variation in such policies according to the type of work performed. *Id.* ¶¶ 69, 72–73, 75–77. The 4AC finally adds allegations that Defendant's compensation and work records show no evidence of work hour tracking, overtime pay, meal periods, reimbursement for phone or internet, or sick leave. *Id.* ¶¶ 70–72, 75–76. These allegations are sufficient to support the claim that the alleged wage and hour violations resulted from corporate policies affecting the entire class. Defendant's motion to dismiss the class claims is denied.

**B. Compliant Wage Statements**

Section 226 requires employers to keep accurate itemized pay statements setting forth gross wages, the actual number of hours and minutes worked, and all applicable hourly rates of pay. Cal. Lab. Code § 226(a). To recover damages under Section 226, an employee must allege that he or she "suffer[ed] injury as a result of a knowing and intentional failure by an employer to comply" with the statute. *Id.* § 226(e)(1). Although the statute provides that an employee is "deemed to suffer injury" when an employer fails to provide a wage statement entirely, *id.* § 226(e)(2)(A), or when the employee cannot "promptly and easily determine" the relevant wage information, *id.* § 226(e)(2)(B), "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016). "[T]he plausible pleading of a flat-out violation of a statutory provision" will not suffice in federal court "since 'a bare procedural violation . . . divorced from any concrete harm' does not constitute an injury in fact." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (quoting *Spokeo*, 578 U.S. at 340). Thus, despite California's minimal statutory requirement for showing injury under Section 226(e), a plaintiff in federal court must still plausibly allege a concrete injury such as confusion, inability to verify wages, or resort to other

records. *Mays v. Wal-Mart Stores, Inc.*, No. CV 18-02318-AB (KKx), 2018 WL 5024919, at *9–10 (C.D. Cal. Aug. 22, 2018), *aff'd,* 804 F. App'x 641 (9th Cir. 2020).

The Court's prior order found that Iravanian had failed to plead such injury. ECF No. 85 at 8. The 4AC adds new allegations that Iravanian "experienced confusion and uncertainty about her wage payments" because she "could not tell if she had been correctly paid all wages due." ECF No. 89 ¶ 52. It further alleges that she spoke with other class members who also expressed uncertainty about whether they were being paid correctly. *Id.* ¶ 63. These allegations suffice to establish confusion and inability to verify wages. *See Godhigh c. Savers, LLC*, No., 16-cv-02874-WHO, 2016 WL 4585778, at *3 (N.D. Cal. Sept. 2, 2016) (finding the plaintiffs pleaded a concrete injury alleging in general terms "that as a result of the non-compliant wage statements they were 'confused about whether they were paid properly and/or they were misinformed about how many total hours they worked in each pay period'").

The Court's prior order also noted that the class claims failed because they did not identify "any specific deficiency in the wage statements allegedly provided to class members, nor . . . at least one pay period during which TransPerfect issued a non-compliant wage statement to a class member." ECF No. 85 at 8. These deficiencies have been cured by the complaint's new allegations establishing that, based on records and Rule 30(b)(6) testimony, no wage statements were provided to any class members. ECF No. 89 ¶ 69. Defendant's motion to dismiss the wage statement claims is denied.

**C. Failure to Pay Overtime**

To state an overtime claim, a plaintiff must allege facts supporting a plausible inference that she worked compensable hours for which she was not properly paid during at least one work week. *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 645–46 (9th Cir. 2014). While precise calculations are not required, conclusory allegations of generalized underpayment are insufficient. *Id.*; *see also Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 942 (N.D. Cal. 2016) (applying the *Landers* standard to California Labor Code violations). For class claims, it is insufficient to allege that other class members "routinely" worked overtime. *See Cortez v. United Nat. Foods, Inc.*, No. 18-CV-04603-BLF, 2019 WL 955001, at *12 (N.D. Cal. Feb. 27, 2019).

Defendant again moves to dismiss Iravanian's class claims, but not her individual claims, for unpaid overtime. ECF No. 94 at 18–19. The 4AC adds new allegations that (1) the volume of work Defendant assigned caused Iravanian and other class members to work overtime, ECF No. 89 ¶¶ 45–46; (2) Iravanian observed another Class Member working overtime during the week of August 1, 2021, *id.* ¶ 48; (4) Defendant's ICAs uniformly lack any overtime pay provisions, *id.* ¶ 38(a); and (4) Defendant's records indicate that Defendant did not track the number of hours worked by Class Members and paid them straight time only, with no overtime premiums, *id.* ¶¶ 70–71. Taken together, these allegations suffice to render Iravanian's classwide unpaid overtime claims plausible.[1] Defendant's motion to dismiss the overtime claims is denied.

**D. Unpaid Minimum Wages**

To state a claim for failure to pay minimum wages under California law, a plaintiff must allege facts that support a plausible inference that, in at least one work week, she was not paid the applicable minimum wage for all compensable hours worked. *Landers*, 771 F.3d at 645–46; *Tan v. Grubhub, Inc.*, 171 F. Supp. 3d 998, 1008 (N.D. Cal. 2016). Although a plaintiff need not plead precise calculations or identify an exact calendar week, conclusory allegations of underpayment, untethered to factual context, are insufficient. *Id*. Iravanian brings only an individual minimum wage claim. ECF No. 98 at 12 n.7.

The Court's prior order noted that "[w]hile Iravanian alleges uncompensated work prior to April 5, 2021, she does not plead facts supporting a reasonable inference that her effective hourly rate fell below the minimum wage in any workweek." ECF No. 85 at 10. In doing so, the Court erroneously misapplied the standard applicable to federal Fair Labor Standards Act claims to minimum wage claims brought under the California Labor Code. *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005) (explaining that the language of the Labor Code and applicable wage orders "expresses the intent to ensure that employees be compensated at the minimum wage

[1] The Court does not intend its prior order to be understood to require that unnamed class members satisfy the *Landers* rule at this stage. *See* ECF No. 85 at 8. As Iravanian correctly notes, other courts have not gone so far, instead requiring only the named plaintiff to do so. ECF No. 98 at 11–12; *see Cortez*, 2019 WL 955001, at *12; *Boggs v. Onity, Inc.*, No. 6:21-CV-00842-MK, 2022 WL 3021154, at *7 (D. Or. July 12, 2022), *report and recommendation adopted*, No. 6:21 CV 00842-MK, 2022 WL 3017522 (D. Or. July 29, 2022).

for each hour worked. The averaging method utilized by the federal courts for assessing a violation of the federal minimum wage law does not apply here."); *see also Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 781, 466 P.3d 325, 336 (2020) ("State law prohibits borrowing compensation contractually owed for one set of hours or tasks to rectify compensation below the minimum wage for a second set of hours or tasks, regardless of whether the average of paid and unpaid (or underpaid) time exceeds the minimum wage.").

As Iravanian argues, she has adequately pleaded a minimum wage claim by alleging that she performed work without any compensation between March 30, 2021 and April 5, 2021, during the period between her hire date and her start date, ECF No. 89 ¶ 43, and that she performed unpaid work during her software testing projects, *id*. ¶ 44. Defendant's motion to dismiss the minimum wage claim is denied.

**E. Meal and Rest Period Breaks**

California law requires employers to provide a 30-minute meal period for shifts longer than five hours and a second meal period for shifts longer than ten hours. Cal. Lab. Code § 512. State wage orders also require employers to authorize and permit a 10-minute rest period for every four hours worked. *See* 8 Cal. Code Regs. § 11040(12). Employers who fail to provide compliant meal or rest periods must pay one additional hour of pay for each workday a required break is not provided. Cal. Lab. Code § 226.7(c). At the pleading stage, it suffices to allege entitlement to breaks and explain the circumstances wherein breaks were not provided. *See Cook v. Matrix Absence Mgmt., Inc.*, 737 F. Supp. 3d 885, 889 (N.D. Cal. 2024) (holding that allegations of misclassification and a heavy workload preventing compliant breaks, about which the plaintiff had complained to her employer, were sufficient at the pleading stage).

The Court's prior order found that Iravanian had adequately stated an individual claim, but not a class claim, "because she fails to state with any specificity that other class members worked shifts requiring meal and rest breaks or that they were subject to a corporate policy or practice preventing them from taking such breaks." ECF No. 85 at 15. The 4AC attempts to cure this deficiency by alleging that Defendant's Rule 30(b)(6) witness testified that Defendant had no policies regarding meal or rest periods and by alleging that Defendant's corporate records do not

United States District Court
Northern District of California

reflect any meal or rest breaks. ECF No. 89 ¶¶ 72–73; ECF No. 98 at 14. Iravanian, however, has again failed to allege (1) that other class members worked qualifying shifts and (2) that they did not take breaks because they were unaware they had the right or were prevented by their workload, the schedule or structure of their work, their supervisors, etc. The class claims for failure to provide meal or rest breaks are dismissed for a second time.

**F. Expense Reimbursement**

Under California Labor Code Section 2802(a), an employer shall indemnify employees for all necessary expenses incurred by the employee as a direct consequence of his or her duties. "Merely alleging failure to reimburse unspecified work-related expenses is insufficient to state a Section 2802 claim." *Tan*, 171 F. Supp. 3d at 1005. "Instead, Section 2802 claims are sufficiently pled where the complaint identifies the particular expenses that were not reimbursed and affirmatively alleges that those expenses were part of the plaintiff's job duties." *Id.*; *see also USS–Posco Industries v. Case*, 244 Cal. App. 4th 197, 205 (2016) (holding that "the elements of a [S]ection 2802 claim are: (1) the employee made expenditures or incurred losses; (2) these were incurred in direct consequence of the employee's duties or obedience to the employer's directions; and (3) the expenditures or losses were necessary" (internal quotation marks and citations omitted)).

In the Court's prior order, it observed that while Iravanian had alleged "that Defendant required her and class members to use personal cell phones, laptops, internet services, and related equipment to perform their work and failed to reimburse those expenses," she had "plead[ed] no factual allegations explaining how those items were necessary to her duties." ECF No. 85 at 16. The 4AC adds a description of Iravanian's and other class members' duties, ECF No. 89 ¶¶ 32, 33, 44, 46, and some context showing why phones, laptops, and internet services were necessary to those duties, including because work "required at a minimum internet and computer access" since class members "routinely worked remotely," *id.* ¶¶ 33, 51, 75(a). The 4AC also pleads that Defendant's pay records reflect no reimbursement for personal internet or computer use. *Id.* ¶ 75(c).

Although Plaintiff does not plead that any reimbursement requests were denied, other

courts have persuasively concluded that such allegations are not required. *See Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009) ("[A] fair interpretation of §§ 2802 and 2804 which produces 'practical and workable results,' consistent with the public policy underlying those sections, focuses not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the employee has incurred a reimbursable expense. If it does, it must exercise due diligence to ensure that each employee is reimbursed." (citation omitted)). At this stage, the 4AC's allegation that the class members' ICAs stated that they would not be reimbursed for expenses incurred, combined with the allegation that Defendant's records reflected no reimbursements to any class member, suffice to show that the employer had reason to believe they were incurring reimbursable expenses and failed to reimburse them. ECF No. 89 ¶¶ 37(c), 75(c).

Iravanian's individual and class claims for failure to reimburse expenses survive the motion to dismiss.

**G. UCL Claim**

**1. Injunctive Relief**

The Court's prior order dismissed Iravanian's claim under the Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200 et seq., in part because she lacked standing to seek injunctive relief as a former employee. ECF No. 85 at 18. Iravanian asserts that the 4AC drops any request for injunctive relief under the UCL, *see* ECF No. 98 at 24–25, but the 4AC in fact still claims that Plaintiff and class members "are entitled . . . to injunctive relief, as well as all other equitable relief required" under the UCL, ECF No. 89 ¶ 176. To the extent that the UCL claim seeks injunctive relief, it is dismissed under Federal Rule of Civil Procedure 12(b)(6) and stricken under Rule 12(f).

**2. Healthy Workplaces, Healthy Families Act**

In her opposition to the first motion to dismiss, Iravanian sought leave to amend the complaint to add UCL claims for unpaid sick leave under the Healthy Workplaces, Healthy Families ("HWHF") Act of 2014, California Labor Code Section 245 et seq., which the Court granted. ECF No. 85 at 18. Defendant now argues that the underlying HWHF violation is

insufficiently pleaded and that it seeks forms of relief unavailable under the UCL. ECF No. 94 at 22–23.

The HWHF "[e]nsure[s] that workers in California can address their own health needs and the health needs of their families by requiring employers to provide a minimum level of paid sick days including time for family care." *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1151 (9th Cir. 2022) (quoting A.B. 1522, 2014 Leg., Reg. Sess. § 2(a) (Cal. 2014) (enacted legislative findings)). "[T]he Act generally requires employers to provide a minimum of twenty-four hours 'paid sick leave' or three 'paid sick days' per year to every employee working in California." *Id.* (citing Cal. Lab. Code § 246(a)(1), (b)).

The 4AC alleges (1) that Defendant's ICAs uniformly fail to provide information about sick leave, ECF No. 89 ¶ 38(d); (2) that Defendant failed to provide any sick leave to class members, *id.* ¶ 76; (3) that Defendant had no sick leave policies that applied to class members, *id.*; and (4) that Defendant's records do not provide any evidence that Defendant provided sick leave to class members, *id*. Defendant argues that Iravanian "does not identify a pay date, pay period, wage statement, accrued balance, request, denial, or decisionmaker involved in any alleged failure to provide sick leave, but cites no authority establishing that any of those details are required, particularly in light of Iravanian's claims that no sick leave whatsoever was provided to any class member. ECF No. 94 at 22. Under the circumstances, Defendant has not demonstrated that the underlying HWHF violation was inadequately pleaded.

The UCL only provides for equitable relief. *See Mish*, 2021 WL 4592124, at *5. The 4AC seeks liquidated damages and other remedies available under Labor Code § 248.5. *See* ECF No. 89 ¶¶ 179, Prayer for Relief (15). As a preliminary matter, damages remedies are not available under the UCL, including those set forth under Section 248.5. And in any case, Section 248.5 provides remedies uniquely available upon enforcement by the Labor Commissioner or the Attorney General, which are unavailable to Iravanian as a private plaintiff. *See* Cal. Lab. Code § 248.5(a). Any request for damages under the UCL is stricken.

**3. Other Predicate Violations**

The Court's prior order also dismissed the UCL claim to the extent predicated on

United States District Court
Northern District of California

underlying labor code violations that were dismissed. ECF No. 85 at 17–18. While it remains true that claims under the unlawful prong of the UCL rise and fall with the underlying violation, Iravanian has cured the deficiencies previously identified in many of her labor code claims, for the reasons set forth above. *See Tan*, 171 F. Supp. 3d at 1010–11.

**H. Equal Pay Act**

"To prove a prima facie case of wage discrimination [under California's Equal Protection Act, Cal. Lab. Code § 1197.5], 'a plaintiff must establish that, based on gender, the employer pays different wages to employees doing substantially similar work under substantially similar conditions.'" *Allen v. Staples, Inc.*, 84 Cal. App. 5th 188, 194 (2022) (quoting *Hall v. County of Los Angeles*, 148 Cal. App. 4th 318, 323 (2007)). "[A] plaintiff must show 'not only that she [was] paid lower wages than a male comparator for equal work, but that she has selected the proper comparator.'" *Id.* (quoting *Hall*, 148 Cal. App. 4th at 324). Assessing the similarity of work requires identifying a "common core of tasks" and then asking whether any additional tasks are sufficient to make the jobs "substantially different." *See Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1220 (9th Cir. 2021).

"The California Equal Pay Act is nearly identical to the federal [Equal Pay Act] and subject to the same analysis."[2] *Sangster v. Hewlett Packard Enter. Co.*, No. 23-CV-05438-HSG, 2024 WL 3408216, at *7 (N.D. Cal. July 11, 2024). Interpreting the federal Equal Pay Act, the Ninth Circuit held that "the proper test for establishing a prima facie case in a professional setting . . . is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority, that affect the wage scale." *Hein*, 718 F.2d at 916. While the Ninth Circuit "look[s] critically upon the use of a single comparator to make out a prima facie case, doing so is not clearly erroneous "unless an appropriate comparator is wrongly excluded from comparison with the plaintiff." *Id.* at 918.

[2] Although the state statute, California Labor Code Section 1197.5, refers to "substantially similar" work instead of "substantially equal" work, courts do not appear to consider this distinction relevant.

United States District Court
Northern District of California

The Court faulted Iravanian's TAC because it relied on the bare allegation that her male replacement was paid more than she was. ECF No. 85 at 21. It did "not describe Iravanian's job duties, the responsibilities of the identified male employee, or facts showing that the two positions involved substantially similar job performance requirements." *Id*. The 4AC explains Iravanian's job duties, states that the comparator's job description shows that he is a "direct replacement" for her, and alleges that the comparator did not perform any significant additional duties beyond those Iravanian performed. ECF No. 89 ¶¶ 33, 44, 46, 65. This suffices to allege a prima facie Equal Pay Act violation. *See Duke v. City Coll. of San Francisco*, 445 F. Supp. 3d 216, 230 (N.D. Cal. 2020) ("Duke alleges that his Latina counterpart was hired for the same position as he was. . . . It is reasonable to conclude that two associate vice chancellors overseeing the same area of responsibility (i.e., student affairs) would have the same job responsibilities. . . . [F]or purposes of a motion to dismiss, plaintiff has alleged sufficient facts to demonstrate the two jobs were substantially equal.").

## I. Wrongful Termination

"The elements of a claim for wrongful termination in violation of public policy under California law are 1) the existence of a public policy and 2) a nexus between the public policy and an employee's termination." *Burtch v. Wal-Mart Assocs., Inc.*, No. CV 22-6513-GW-RAOX, 2024 WL 994568, at *15 n.16 (C.D. Cal. Feb. 6, 2024), *adopted*, No. CV 22-6513-GW-RAOX, 2024 WL 993900 (C.D. Cal. Feb. 8, 2024) (citing *Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 749 (9th Cir. 2011)). Iravanian asserts a relevant public policy in California Labor Code Section 98.6, which states that an employer may not discharge "or in any manner discriminate, retaliate, or take any adverse action against any employee" for "ma[king] a written or oral complaint that they are owed unpaid wages."[3]

Iravanian has failed to identify a nexus between her identified public policy, which protects employees complaining about wage and hour violations, and any constructive termination. She

[3] The 4AC also suggests that Defendant violated California Labor Code Section 1102.5(a), but neither the 4AC nor Iravanian's opposition to the motion to dismiss identifies any conduct suggesting that that provision applies. *See* ECF No. 89 ¶¶ 208–215; ECF No. 98 at 16–17.

United States District Court
Northern District of California

states only that "[t]he FAC alleges constructive termination, plausibly connected to Plaintiff's complaints," but does not describe any plausible connection or otherwise provide any reason to surmise that "Defendant's refusal to classify and pay properly"—the conduct that allegedly induced her to resign—resulted from her exercise of her right to complain. ECF No. 98 at 17. The wrongful termination claim is dismissed. The Court's prior order also dismissed this claim because Iravanian conceded that it was insufficiently pleaded and asked for leave to amend. ECF No. 85 at 5. Having provided Iravanian with a second opportunity to plead an adequate wrongful termination claim, the Court now dismisses it with prejudice.

**J. PAGA Claim**

Defendant moves to dismiss Iravanian's PAGA claim because it is untimely and overbroad and because the LWDA notice was directed to the wrong entity.[4] ECF No. 94 at 23–26. On the record and briefs before the Court, the Court cannot conclude that the PAGA claim was untimely. It is also not overbroad, and to the extent that the initial LWDA notice was directed to the wrong entity, this deficiency was cured by a subsequent amended notice. The PAGA claim survives the motion to dismiss.

**1. Timeliness**

"The statute of limitations for PAGA claims is one year." *Brown v. Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 839 (2018). "PAGA provides for a tolling period of up to 65 days after an aggrieved employee files notice with the [California Labor & Workforce Development Agency ("LWDA")] to allow for exhaustion of administrative remedies." *Carter v. Golden Gate Freightliner Inc.*, No. 19-CV-02034-JSC, 2019 WL 5864576, at *3 (N.D. Cal. Nov. 8, 2019) (citing Cal. Lab. Code § 2699.3(a)(2)(A), (d)). "Thus, as a practical matter, the statute of limitations for the filing of the LWDA letter is one year, and the statute of limitations for the filing of the PAGA lawsuit is one year and sixty five days (or 430 days total)." *Harper v. Charter*

[4] Defendant also seeks to dismiss or strike Iravanian's PAGA claims predicated on violations of Labor Code Sections 204 and 210 because the Court previously dismissed those claims with prejudice. ECF No. 94 at 23–24. As the Court acknowledged in granting Iravanian's subsequent motion for reconsideration as to that aspect of the order, it did so erroneously. ECF No. 100. Iravanian may re-plead those claims.

*Commc'ns, LLC*, No. 2:19-CV-00902 WBS DMC, 2021 WL 603724, at *21 (E.D. Cal. Feb. 16, 2021). "Generally, a statute of limitations begins to run when a cause of action accrues, meaning when the cause of action is complete with all of its elements. *Esparza v. Safeway, Inc.*, 36 Cal. App. 5th 42, 59 (2019), *as modified on denial of reh'g* (June 28, 2019) (citing *Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389, 1397 (2010)).

Iravanian argues that "[s]ince Plaintiff's complaint was filed on November 8, 2022, her PAGA claim is timely as long as she suffered at least one Labor Code violation after September 4, 2021 (one-year and 65 days prior)." ECF No. 98 at 18. Her position tracks "the plain language of the statute," under which "an aggrieved employee need only suffer one of the Labor Code violations alleged against his or her employer to be able to bring a PAGA claim on behalf of himself or herself and current or former employees who suffered any Labor Code violation at the hands of the employer." *Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI-MJ, 2015 WL 2384895, at *5 (E.D. Cal. May 19, 2015) (citing *Jeske v. Maxim Healthcare Servs., Inc.,* 2012 WL 78242, *13 (E.D. Cal. Jan.10, 2012)); *see also Huff v. Securitas Sec. Servs. USA, Inc.*, 23 Cal. App. 5th 745, 754 (2018) ("[A]ny Labor Code penalties recoverable by state authorities may be recovered in a PAGA action by a person who was employed by the alleged violator and affected by at least one of the violations alleged in the complaint. Indeed, we cannot readily derive any meaning other than that from the plain statutory language.").[5]

Defendant does not contest that statutory standing under PAGA requires the plaintiff to have suffered only one of the underlying violations. ECF No. 99 at 17. However, it argues that statutory standing ought not be confused with timeliness, and that "timeliness remains a separate prerequisite that must be satisfied under the one-year limitations period as to the violations for which penalties are sought." *Id*. This position makes little sense: if Iravanian need not establish that she suffered each violation she seeks to redress under PAGA at all, then she consequently

[5] Some courts have subsequently suggested that Article III imposes additional restrictions on the standing requirements of the PAGA statute, such that "in federal court, a '[p]laintiff is unable to pursue a PAGA claim in a representative capacity if his own claim is time-barred.'" *Clark v. QG Printing II, LLC*, No. 118CV00899AWIEPG, 2023 WL 2843989, at *8 (E.D. Cal. Apr. 7, 2023)). Here, Defendant raises no such argument and the Court does not address the issue.

need not establish that she *timely* suffered those violations.

The cases Defendant cites do not support requiring Iravanian to establish that she timely suffered each predicate violation. *Williams v. Alacrity Sols. Grp., LLC* holds merely that "the PAGA plaintiff must bring a PAGA action . . . within one year of the last Labor Code violation he or she individually suffered," as opposed to "within one year of the last Labor Code violation suffered by any of the aggrieved employees covered by the lawsuit," without addressing how the statute of limitations requirement interacts with the *Huff* rule that the plaintiff need only have personally suffered one of the underlying violations. 110 Cal. App. 5th 932, 942 (2025). *Esparza* considered the plaintiff's argument that her untimely PAGA claims related back to an original complaint asserting only labor code violations, before which no LWDA notice had been filed. *Esparza*, 36 Cal. App. 5th at 60–64 (2019). The Court held that allowing PAGA claims to go forward in the absence of a timely LWDA notice would frustrate the legislature's purpose to provide LWDA with "the opportunity to decide whether to allocate scarce resources to an investigation." *Id*. at 61 (citation omitted). *Esparza*, like *Williams*, did not consider whether the named plaintiff needs to have timely suffered each violation alleged. Given the holding from *Huff* and the absence of contrary authority identified by Defendant, the Court adopts the rule proposed by Iravanian: her PAGA claims are timely as long as she personally suffered one underlying violation within the statutory window.

Iravanian identifies two violations as occurring within one year and 65 days prior to the filing of the complaint. ECF No. 98 at 19. Namely, Defendant failed to provide her with a wage statement and failed to pay her overtime when it issued its final payment to her on October 20, 2021.[6] That Iravanian's overtime claim accrued when her final paycheck was due is sensible. The problem with Iravanian's position, however, is that her final paycheck was due long before

[6] The parties dispute whether this date, which appears only in the PAGA notice attached to the complaint, is properly considered to have been alleged for the purpose of a motion to dismiss. *See* ECF No. 99 at 16. As Defendant concedes, however, the Court properly considers exhibits attached to the complaint. *Id*.; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008). And even if the Court were not authorized to consider documents appended to the complaint in evaluating a motion to dismiss, the Court would grant leave to amend to add that date. It is therefore prudent to address the merits of the accrual date issue.

October 20, which was two months after her separation from Defendant. An employee's final paycheck is due on her last day, or, if she did not give 72 hours' notice of her resignation, within 72 hours of her last day. Cal. Lab. Code §§ 201(a), 202(a); *see Smith v. Superior Court*, 39 Cal. 4th 77, 92 (2006). Iravanian's overtime claim therefore accrued on August 20, 2021 (or 72 hours later) and does not fall within the statute of limitations period.

The cases Iravanian cites do not support her position that her overtime claim accrued when her final wages happened to be paid, notwithstanding when they were due. For instance, *Aubry v. Goldhor* held that "a separate cause of action for overtime compensation accrues on each regular payday immediately following the work period during which the services were rendered and for which overtime compensation is claimed," but it addressed the rule for timely paychecks during employment, not after separation. 201 Cal. App. 3d 399, 406 (1988). And even if *Aubry* could be applied to post-separation wages, in no sense is October 20 the "regular payday immediately following the work period during which the services were rendered" where Iravanian stopped working for Defendant on August 20. Iravanian's other cases, which also refer to accrual of overtime claims on regular paydays, fail to support her position for the same reasons. *See Ray v. California Dep't of Soc. Servs.*, No. CV 17-04239 PA (SKx), 2020 WL 5498060, at *4 (C.D. Cal. July 10, 2020), *aff'd sub nom. Ray v. Los Angeles Cnty. Dep't of Pub. Soc. Servs.*, 52 F.4th 843 (9th Cir. 2022); *Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL 3143951, at *8 (N.D. Cal. June 6, 2016), *aff'd in part*, 733 F. App'x 349 (9th Cir. 2018).

Labor Code Section 226, meanwhile, provides that an employer must furnish wage statements "semimonthly or at the time of each payment of wages." Iravanian cites *Carter v. Golden Gate Freightliner* for the proposition that "[t]he obligation to provide a wage statement arises when a final payment is issued, or at a later semimonthly date, but not at separation." ECF No. 98 at 19 (citing 2019 WL 5864576, at *4–6). In that case, the plaintiff had been paid his final paycheck on the date of termination of September 18, 2017 and argued that the wage statement claim accrued on the regular semimonthly date when the defendant distributed its wage statements, which fell on September 27, 2017. *Id.* Noting the statute's use of the disjunctive "or," the court agreed. *Id.* *Carter*'s application here is unclear, however, because Iravanian was not

paid when the statute required, but two months later. And Iravanian does not allege any "regular semimonthly date" on which the defendant typically provided wage statements.

Notwithstanding *Carter*'s inapplicability, the plain language of the statute states that wage statements are due "at the time of each payment of wages." Iravanian's last payment of wages was October 20, untimely though that payment may have been. It is Defendant's burden to justify dismissal at this stage and they have marshaled neither persuasive authority nor argument sufficient to convince the Court that Iravanian's wage statement claim accrued before October 20. Because Iravanian personally suffered one timely Labor Code violation, her PAGA claims are timely.

**2. Relation Back**

Iravanian's initial LWDA notice, submitted on August 16, 2022, erroneously identified the defendant as "Translations.com, Inc." ECF No. 89 ¶ 192; ECF No. 89 at 40. An amended LWDA notice, submitted on August 27, 2024, correctly named the present defendant as "TransPerfect Translations International, Inc." *Id.* ¶ 193; ECF No. 89 at 45. Translations.com is a subsidiary of TransPerfect Translations International and shares the same business address and officers and is represented by the same attorneys. ECF No. 98 at 21–22; ECF No. 89 at 40, 45.

The parties cite several cases, all of which point in the same direction: application of the relation back doctrine is appropriate here because the original LWDA notice fulfilled the statutory purposes of affording the LWDA the opportunity to decide whether to investigate and giving the defendant the opportunity to respond. The August 2024 LWDA notice relates back to the one submitted in August 2022.

In *Smith v. 9W Halo W. OpCo L.P.*, plaintiff sought to relate back an untimely amended LWDA notice to include defendants unearthed through discovery, arguing that the later-added defendants were joint employers with the original defendants. No. 20-CV-01968-PJH, 2023 WL 3047383, at *6 (N.D. Cal. Apr. 20, 2023). Because the plaintiff had failed to establish that the new defendants were in fact his joint employers, the amended LWDA notice did not relate back to the original notice. *Id.* at *6. But the court noted pointedly that "if plaintiff is able to establish in an amended complaint that one of them is a joint employer and plaintiff specifically establishes

that the late-added defendant was effectively put on notice by the original LWDA notice, then the amended LWDA notice will relate back." *Id.*

*Smith* cited *Atiqi v. Acclaim Tech. Servs., Inc.*, an earlier case from the Central District of California that also addressed this issue. No. EDCV1400628VAPSPX, 2015 WL 13914845, at *4 (C.D. Cal. Mar. 26, 2015). The Court in *Atiqi* held persuasively that:

> Although no court appears to have addressed the relation back doctrine in a circumstance like this one, where the untimely notice to additional defendants relates back to an earlier, timely notice, the Court finds it appropriate to apply the relation back doctrine. Plaintiff's PAGA claim against the New Defendants alleges violations of the same Labor Code provisions, and alleges the same underlying facts and theories as against the first Defendant, Acclaim. If the New Defendants were, in fact, in a joint employment relationship with Acclaim, then the first January 2014 letter to Acclaim should have placed them on notice of the alleged wrongs, given the close relationship.

*Id.* Although the typical scenario in which application of the relation back doctrine is appropriate therefore appears to be one in which a joint employer is added later, the same reasoning applies here—perhaps with more force. While Translations.com and Translations Transperfect International are not alleged to have been Iravanian's joint employers, they are joined by a close corporate relationship as parent and subsidiary sharing office space, and notice to the former undoubtedly provided notice to the latter.

When courts find relation back inappropriate, they do so because the original notice omitted substantive aspect of the claims, such that allowing the amended notice to relate back would deprive the agency of the chance to decide whether to investigate.

In *Sanchez v. Gruma Corp.*, the plaintiff argued that an amended LWDA notice letter asserting claims on behalf of the plaintiff and a group of other aggrieved employees related back to an earlier notice asserting claims on behalf of the plaintiff alone. No. 19-CV-02015-WHO, 2019 WL 2716539, at *4 (N.D. Cal. June 28, 2019). The Court held that "[a]lthough the relation back doctrine can apply to LWDA notices, the 'doctrine cannot be used to frustrate the intent of the Legislature to require compliance with administrative procedures as a condition to filing an action.'" *Id.* at *4 (citing *Brown*, 28 Cal. App. 5th at 841–42). Because the original notice letter included no representative claims, allowing the amended letter to relate back would deprive the

LWDA of the opportunity to consider whether to allocate its scarce resources to investigating those representative claims, and deprive the employer of the opportunity to respond to the representative claims. *Id*.

In *Ovieda v. Sodexo Operations, LLC*, the plaintiff requested the opportunity to send an amended notice to the LWDA "alleging all of the details alleged in Plaintiffs' SAC." No. CV 12-1750-GHK SSX, 2013 WL 3887873, at *5 (C.D. Cal. July 3, 2013). The court denied the request because "allowing an amended notice to be submitted after the civil action has already been filed defeats the very purpose of the exhaustion requirement, which is to give the LWDA the opportunity to make an informed decision about whether to pursue the matter itself." *Id*. Likewise, in *Ortiz v. Amazon.com LLC*, the plaintiff sought to amend an LWDA notice to allege new theories of the defendant's labor code violations. No. 17-CV-03820-JSW, 2017 WL 11093812, at *8 (N.D. Cal. Oct. 10, 2017). Citing *Ovieda* and its reasoning, the Court declined. *Id*.

Defendant also cites *Hutcheson v. Superior Court*, 74 Cal. App. 5th 932, 939, 947–50 (2022), for the proposition that "California appellate authority likewise treats section 2699.3 notice as a mandatory precondition to suit that cannot be salvaged by post-hoc relation back." ECF No. 99 at 18. As a preliminary matter, the opinion ends at page 945; pages 947 to 950 do not exist. More fundamentally, *Hutcheson* does not support Defendant's position. That court held that a subsequent complaint substituting a new named plaintiff could relate back to the original complaint, which predated the subsequent plaintiff's LWDA notice, because the original LWDA notice and complaint provided the requisite notice of the facts and theories underlying the claims. *Id*. at 941–42.

Here, the agency has not been deprived in any way of the opportunity to decide whether to investigate. The defendant plainly had notice of the original claim because its subsidiary was provided notice at its common business address. To foreclose Iravanian's suit because she named "Translations.com, Inc." instead of "TransPerfect Translations International, Inc." would be manifestly unfair. And to allow her later LWDA notice to relate back does no harm to Translations or the LWDA, both of which were provided with the requisite notice at the requisite

United States District Court
Northern District of California

time.

**3. Overbreadth**

Although a PAGA plaintiff need not satisfy the requirements of a Rule 23 class action, she must allege facts demonstrating that the challenged practices plausibly extend beyond her own circumstances to the broader group on whose behalf she seeks penalties. *See Wood v. N. Am. Van Lines, Inc.*, No. 8:20-cv-02092-JLS-ADS, 2022 WL 16894838, at *2 (C.D. Cal Aug. 16, 2022) (requiring plaintiff to narrow PAGA allegations where the complaint's definition of "aggrieved employees" extended beyond the workers described in the factual allegations); *Luna v. New Hampshire Ball Bearings, Inc.*, 2021 WL 4539740, at *5 (C.D. Cal. Feb. 8, 2021) (dismissing PAGA claim where the complaint included an overly broad scope of aggrieved employees).

The Court's prior order concluded that Iravanian had failed to justify the breadth of the PAGA group, which included "all independent contractors who performed any services for Defendant during the class period, regardless of job function, contractual terms, or factual similarity." ECF No. 85 at 24–25. Defendant argues that the 4AC remains deficient for the same reason. ECF No. 94 at 26. But the 4AC adds allegations explaining that the ICAs were form contracts containing common terms, and that Defendant's policies applied across the board to its independent contractors. *See* ECF No. 89 ¶¶ 37–38, 31–32, 69, 71–73, 75–77. These new allegations show that the PAGA group is not overbroad. Iravanian's PAGA claim is not dismissed.

**CONCLUSION**

The motion is granted in part and denied in part for the reasons set forth above. Because Iravanian has previously been given the opportunity to amend each of the claims dismissed in this order, those claims are dismissed with prejudice. *Mullins v. Int'l Bhd. of Teamsters*, No. 23-CV-03939-EMC (EMC), 2025 WL 807959, at *14 (N.D. Cal. Mar. 13, 2025) ("The dismissal is with prejudice because the Court previously gave Plaintiffs an opportunity to amend the claim, but the claim is still deficient."); *Media.net Advert. FZ-LLC v. Netseer, Inc.*, 198 F. Supp. 3d 1083, 1088

/ / /

/ / /

United States District Court
Northern District of California

(N.D. Cal. 2016) ("Because the Court previously gave Plaintiff an opportunity to amend but it did not cure the deficiency when given the opportunity, the dismissal is with prejudice.").

**IT IS SO ORDERED.**

Dated: August 6, 2026

JON S. TIGAR
United States District Judge